IN THE UNITED STATES DISTRICT COURT OF
THE DISTRICT OF NEW MEXICO

ZIA HOSPICE, INC.      )
             )
  Plaintiff,      )
             )
v.           )  CV 09-0055 CG/LFG
             )  CV 09-1108 CG/ACT
KATHLEEN SEBELIUS     )
Secretary of the United States   )
Department of Health and Human Services )

  Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the parties' cross motions for summary judgment: *Plaintiff's Motion for Summary Judgment on Declaratory and Injunctive Claims for Relief* (Civ. 09-055, Doc. 100; Civ. 09-1108 Doc. 35), *Defendant's Response to Plaintiff's Motion for Summary Judgment* (Civ. 09-055, Doc. 101), *Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment* (Civ. 09-055, Doc. 103), *Defendant's Motion for Summary Judgment and Brief in Support of Summary Judgment* (Civ. 09-055, Doc. 110; Civ. 09-1108, Doc. 31), *Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support* (Civ. 09-1108, Doc. 32), and *Defendant's Reply Memorandum in Support of her Motion for Summary Judgment* (Civ. 09-1108, Doc. 33).  Plaintiff filed two lawsuits - Civ. 09-055 ("Zia I"); Civ. 09-1108 ("Zia II") - against the Department of Health and Human Services in 2009 and both suits contain nearly identical factual allegations. Pursuant to an unopposed motion by the defendant, this Court consolidated both cases. (*See* Civ. 09-

055, Doc. 84).[1] The cross-motions for summary judgment have been filed in both cases and the motions are ready for resolution. The parties' dispute centers on the validity of the Department of Health and Human Services' ("HHS") regulation 42 C.F.R. § 418.309(b)(1). Plaintiff contends that the regulation is invalid and asks that HHS be enjoined from enforcing all repayment demands based upon that regulation. Defendant contends that Plaintiff lacks standing to challenge the regulation, that this Court lacks subject matter jurisdiction over these claims, that the regulation is valid and that all repayment demands pursuant to that regulation be enforced. Defendants further argue that Plaintiff failed to exhaust its administrative remedies for Fiscal Year 2008. (Civ. 09-1108, Doc. 26; Doc. 27)

This Court, having considered the positions of the parties, the relevant law, and otherwise being fully advised in the premises, **FINDS** that Plaintiff's Motion is well-taken and will be **GRANTED IN PART AND DENIED IN PART**. The Court finds that Defendant's Motion is not well-taken and will be **DENIED** for the reasons set forth below.

## I.  BACKGROUND

### A.  Medicare and the Hospice Care Cap

In 1982, Congress enacted Section 122 of the Tax Equity and Fiscal Responsibility Act (Pub. L. 97-248), which extended Medicare benefits for hospice care. Hospice care is available for patients who are classified as "terminally ill" and who have a life expectancy of six months or less. *See* 42 U.S.C. §§ 1395f(a)(7)(A),

---

[1] Unless otherwise noted, all further references to docket numbers will correspond with the docket entries for Civ. 09-055.

2

1395x(dd)(3)(A). Zia Hospice provides hospice care for persons covered by Medicare. (*See Amended Complaint*, Doc. 98 at 1).

While there is no limit on the amount of time a beneficiary may elect to receive hospice care, the amount of money that Medicare will reimburse hospice care providers is limited by an annual statutory cap. 42 U.S.C. § 1395f(i)(2)(A). The "intent of the cap was to ensure that payments for hospice care would not exceed what would have been expended by Medicare if the patient had been treated in a conventional setting." H.R. Rep. No. 98-333 at 1 (1983). Reimbursements per patient are currently capped at $6,500, with that cap being adjusted annually using the Consumer Price Index to account for inflation. *See* 42 C.F.R. § 418.309(b)(1)(a). Any payments made to hospices during a fiscal year in excess of the statutory cap must be repaid to Medicare. Demands for repayment under the cap typically originate from 'fiscal intermediaries,' which are agents of the Secretary. *See* 42 U.S.C. §§ 1395h, 1395kk-1.

To determine a hospice provider's annual reimbursement cap, HHS multiplies each patient's cap amount by the number of beneficiaries who elected to receive hospice care during that fiscal year. However, in acknowledging that a hospice patient may receive care in more than one fiscal year, Congress requires HHS to account for that patient for each year she received treatment. 42 U.S.C. § 1395(f)(i)(2).[2] Therefore, a patient's cap amount for any given fiscal year is proportionally reduced to reflect any care that was provided in previous or subsequent years or with a different hospice care provider. *See, e.g. Affinity Healthcare Services, Inc. V. Sebelius*, No. 10-946, 2010 WL

---

[2] The fiscal year for Medicare reimbursement demands runs from November 1 to October 31. (Def.'s Mot. Sum. Judg., Doc. 110 at 5).

4258989, at 2 (D.D.C. Oct. 25, 2010). Congress codified this reimbursement system under 42 U.S.C. § 1395(f)(i)(2):

> [T]he "number of medicare beneficiaries" in a hospice program in an accounting year is equal to the number of individuals who have made an election . . . with respect to the hospice program and have been provided hospice care . . . in the accounting year, *such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year or under a plan of care established by another hospice program.*

(Emphasis added).

Rather than perform the proportional allocation of care across years of treatment that the Congressional statute requires, HHS decided to count "each beneficiary only in the reporting year in which the preponderance of the hospice care would be expected to be furnished . . . " 48 Fed. Reg. 38146, 38158 (Aug. 22, 1983). To implement this payment scheme, HHS promulgated 42 C.F.R. § 418.309(b)(1), which provides:

> For purposes of this calculation, the number of Medicare beneficiaries includes . . . beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed an election to receive hospice care . . . during the period beginning on September 28 (35 days before the beginning of the cap period) and ending on September 27 (35 days before the end of the cap period).

The failure to proportionally allocate the cap across the years of care has, in recent years, overstated repayment demands. *See generally* Marc Adler, *The Government's Cap on Dying: Why Is the Medicare Hospice Benefit Cap Being Exceeded and How Should This Problem Be Addressed?*, 4 NAELA J. 201 (2008). Plaintiff claims that the regulation improperly increases repayment demands because the regulation gives providers credit for the hospice cap only in the year where the preponderance of hospice care was provided.  (*See* Pl. Amend. Comp., Doc. 97 at 9). Accordingly, Plaintiff has challenged the hospice cap calculations imposed under §

418.309(b)(1). A review of the procedures which Plaintiff must follow in order to challenge such calculations is in order.

### B.  Administrative Exhaustion of Reimbursement Claims

The Secretary of HHS is authorized by Congress to write regulations which both define reimbursable costs and determine the manner in which they will be distributed. *See* 42 U.S.C. § 1395x(dd)(1). Providers file an annual report with their fiscal intermediary in order to be reimbursed and the intermediary determines the 'Notice of Program Reimbursement' ("NPR") that the provider is entitled to.  42 C.F.R. §§ 413.20, 413.24. Fiscal intermediaries may also require that providers reimburse the intermediary in the event that an overpayment is alleged to have occurred.  *See* 42 C.F.R. § 405.371. Should a provider be dissatisfied with the intermediary's NPR determination, the provider may appeal the determination to the Provider Reimbursement Review Board ("PRRB"), so long as the contested amount exceeds $10,000. A provider may appeal an adverse decision by the PRRB by filing a civil action in the appropriate United States District Court within sixty days of the decision.  42 U.S.C. 1395oo(a),(f). However, the Administrator of the Centers for Medicare and Medicaid Services may also review a PRRB decision within 60 days of the decision. 42 C.F.R. § 405.1840(c)(3).

In 1980, Congress added a provision to the Medicare statute providing for Expedited Judicial Review ("EJR") of PRRB decisions. 42 U.S.C. § 1395oo(f)(1). The statute was designed to provide for expedited review when the PRRB was without the authority to resolve questions of law or where the dispute concerned the validity of HHS

regulations. *Id.* The statute explicitly states that a PRRB decision to grant EJR "shall be considered a final decision and not subject to review by the Secretary." *Id.*

C.   **HHS and Zia Hospice**

In the consolidated cases before the Court, Plaintiff has appealed three repayment demands. (Doc. 97). In each case, Zia specifically challenges the validity of 42 C.F.R. § 418.309(b)(1), arguing that the regulation is inconsistent with its parent Congressional statute, 42 U.S.C. § 1395f(I)(2)(C).

Initially, in Zia II, Plaintiff challenged the repayment demands in the amounts of $1,625,142.00 and $854,536.00 for FY 2006 and 2007, respectively. (*See* Def.'s Mot. Dismiss, CV 09-1108, Doc. 26 at 1-2). Both the 2006 and 2007 claims were properly brought before the PRRB and in both instances the PRRB determined that it did not have the authority to decide the legal issues presented. The PRRB granted Plaintiff's request for EJR in both instances and Plaintiff has properly exhausted its administrative remedies for both claims. (*Id.*). In January of 2010, Defendant made an additional repayment demand in the amount of $1,184,871.00 for FY 2008. (*Id.* at 2). Plaintiff disputed the repayment demand and sought administrative review before the PRRB. (*Id.* at 3). The PRRB stated that it lacked the authority to decide the validity of the hospice cap regulation and  it again granted Plaintiff's request for EJR. (*Id.* at 3-4). Plaintiff then sought leave of this Court to amend it's complaint to include claims for FY 2008. (Doc. 95).  This Court granted the motion and Plaintiff filed the amended complaint on August 4, 2010.  (Doc. 97).

On August 12, 2010, the Administrator vacated the PRRB's decision to grant EJR for Plaintiff's FY 2008 claims and remanded the case back to the PRRB for further proceedings. (CV 09-1108, Doc. 26 at 5). Defendant states that the Administrator reviewed and vacated the PRRB's determination pursuant to 42 C.F.R. § 405.1875(a)(2)(iii). (*Id.* at 3-5). Defendant therefore claims that there has been no final agency action and that Plaintiff's FY 2008 claims must be dismissed as unexhausted.

With regard to the substantive hospice cap regulation, Plaintiff contends that HHS' regulation is facially invalid and contrary to the plain language of 42 U.S.C. § 1395f(i)(2)(C). (Pl.'s Mot. Summ. J., Doc. 100 at 11). Plaintiff further alleges that HHS' regulation is arbitrary and capricious and that repayment demands pursuant to those regulations constitute an unlawful taking in violation of the Fifth Amendment of the Constitution. (*Id.*). Plaintiff seeks to permanently enjoin HHS from using 42 C.F.R. § 418.309(b) in calculating Plaintiff's repayment demands, to set aside the current repayment demands from FY 2006, 2007, and 2008, and to remand this case to HHS for a final determination of the amount owed by Zia for those three years. (*Id.* at 11-12).

## II.   STANDARDS OF REVIEW

### A.   Summary Judgment under FED. R. CIV. P. 56

Summary judgment may be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law.'" *Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006) (quoting RULE 56(c)). "[I]t is important to note that cross-motions for summary judgment do not automatically empower the court to dispense with the determination [of] whether questions of material fact exist. They require no less careful scrutiny than an individual motion. [The court] must be convinced in all instances that the issues before [it] may be resolved as a matter of law." *Mo. Pac. R.R. Co. v. Kan. Gas & Elec. Co.*, 862 F.2d 796, 799 (10th Cir. 1988) (internal quotations and citation omitted).

Furthermore, when dealing with cross-motions for summary judgment, the court must analyze each motion individually and on its own merits. *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir.1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). Motions for summary judgment are proper in federal court review of Medicare proceedings. HARVEY L. MCCORMICK, MEDICARE AND MEDICAID CLAIMS AND PROCEDURES § 19:6 (Thomson Reuters, 4th ed.) (2009).

### B.    Review under the Administrative Procedures Act

Federal district courts have jurisdiction to review "any final decision of the [PRRB] . . . by a civil action commenced within 60 days." 42 U.S.C. §1395oo(f)(1). Review of the Secretary's underlying decision is governed by 42 U.S.C. § 1395oo(f)(1), which incorporates the standard of review of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. Under the APA, a reviewing court must affirm the agency's decision unless the court determines that the decision was "arbitrary, capricious, an

abuse of discretion or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), *St. Mark's Charities Liquidating Trust v. Shalala*, 141 F.3d 978, 980 (10th Cir.1998), or was "unsupported by substantial evidence," 5 U.S.C. § 706(2)(E), *Pennaco Energy, Inc. v. U.S. Dep't of the Interior*, 377 F.3d 1147, 1156 (10th Cir.2004). The arbitrary-and-capricious standard of review has been equated to the substantial evidence test. *Nw. Pipeline Corp. v. Fed. Energy Regulatory Comm'n*, 61 F.3d 1479, 1485 (10th Cir. 1995). Deference is especially warranted for the Secretary's interpretation of complex and highly technical regulatory programs such as Medicare. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

## III.    ANALYSIS

### A.    This Court Has Subject Matter Jurisdiction

Defendant claims that this Court lacks subject matter jurisdiction to hear Plaintiff's appeal because Plaintiff has failed to demonstrate that there is at least $10,000 in controversy, which is a requirement for federal court review pursuant to 42 U.S.C. §§ 1395oo(a), (f). (Doc. 110 at 11-16). While Defendant concedes that the PRRB found that the "estimated amount in controversy exceeds $10,000" when it granted EJR for the repayment demands, Defendant contends that this was in error. (*Id.* at 12). Defendant claims that there is no evidence in the administrative record which shows that using the fractional allocation approach mandated by 42 U.S.C. § 1395 would reduce the current repayment demands by at least $10,000. (*Id.* at 11). Defendant contends that the PRRB could not properly determine whether the amount in

controversy requirement was met without such evidence. (*Id.* at 11-12); 42 C.F.R. § 405.1839(a)(1).

Section 1395oo(f)(1) states that a provider may seek judicial review of any "final decision" of the PRRB. The PRRB may only enter a "final decision" if the provider has shown, *inter alia*, that the amount in controversy is $10,000 or more. 42 U.S.C. § 1395oo(a)(2). Based on Plaintiff's representation that they were challenging the entire repayment demand, the PRRB determined that Zia's challenge to the FY 2006, 2007, and 2008 claims all exceeded the $10,000 threshold. (Doc. 97-3 at 1-2, 4-5; Doc. 97-5 at 1-2). Defendant did not challenge the PRRB's grant of EJR for either the FY 2006 or 2007 claims.

Had Defendant wished to challenge the PRRB's acceptance of the amount in controversy, the proper course would have been to remand the issue to the PRRB. The Secretary's authority to review PRRB decisions is found at 42 § C.F.R. 405.1875, which provides that a decision by the PRRB shall be final unless the secretary, either on her own motion or on request from one of the parties, reverses, affirms, or modifies the Board's decision within sixty days of that decision. 42 C.F.R. § 405.1875; 42 U.S.C. § 1395oo(f)(1). Defendant has argued that the Court lacks jurisdiction to consider Zia's 2008 demand because the Secretary reversed the PRRB's EJR decision, thereby negating the finality of that decision. (*See* Civ. 09-1108, Doc. 26 at 7-8). Defendant also contends that the 2006 and 2007 demands - which the secretary never challenged at the administrative level - are similarly defective because the PRRB accepted Zia's contention that the amount in controversy exceeded $10,000. (Doc. 110 at 11-12).

10

Without having challenged the PRRB's EJR determination at the administrative level, Defendant now asks this Court to remand the case to have the PRRB review Plaintiff's 2006 and 2007 requests for EJR - a review that the Secretary herself did not request. Defendant cannot have it both ways.

The Court further notes that the possibility that the PRRB made a mistake in determining that the $10,000 threshold was met is not grounds for remanding the case. *See, e.g.*, *Russell-Murray Hospice, Inc. v. Sebelius*, 724 F.Supp.2d 43, 56-57 (D.D.C., 2010); *IHG Healthcare v. Sebelius*, 717 F.Supp.2d 696, 706 (S.D.Tex., 2010). Many courts have likened the amount in controversy requirement under § 1395oo(a)(2) to the $75,000 amount in controversy requirement in federal diversity actions. *See, e.g.*, *Infinity Care of Tulsa*, No. 09-cv-723, 2011 WL 778111 at *3 (N.D.Okla. February 28, 2011); *IHG*, 717 F.Supp.2d at 969. Under Supreme Court precedent, a Plaintiff's assertion regarding the $75,000 requirement controls if it is made in good faith. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). While this is not a diversity action, the Court notes that Zia submitted documentation to the PRRB stating that, had the 2008 demand been calculated pursuant to the proportional allocation mandated by Congress, Zia's repayment demand would have been reduced by at least $73,000. (Doc. 91-7 at 2-3). Zia further supplied affidavits demonstrating that a proportional calculation for  FY 2006 and 2007 would have reduced the repayment demand by approximately $100,000 and $20,000 respectively. (Doc. 109-1 at 1-4). Zia has made a good faith showing that each of the three repayment demands exceed the $10,000 amount in controversy requirement. As noted by the Russell-Murray court, "[t]o

11

require the PRRB to gather data and perform a detailed calculation of the specific amount in controversy simply to establish its jurisdiction to hear an appeal would represent a significant departure from the established scope of jurisdictional-fact finding." *Russell-Murray*, 724 F.Supp.2d at 56. The Court therefore concludes that the FY 2006 and 2007 demands are properly before this Court.

### B.   Plaintiff Has Standing

Defendant claims that Plaintiff lacks standing to challenge HHS' regulation. (Doc. 110 at 16-18). Article III, Section 2 of the United States Constitution restricts a federal court's jurisdiction to actual "Cases" and "Controversies." U.S. CONST. Art. III, § 2, cl. 1; *Raines v. Byrd,* 521 U.S. 811, 818 (1997). The Supreme Court has outlined three essential elements to constitutional standing: (1) that Debtors have suffered an "injury in fact" - which is an injury that is concrete and actual; (2) causation - that the injury is fairly traceable to the challenged action of the defendant; and (3) redressability - that a favorable decision by the court will redress the alleged injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Southern Utah Wilderness Alliance v. Office of Surface Mining Reclamation and Enforcement*, 620 F.3d 1227, 1233 (10th Cir. 2010). Plaintiff bears the burden of establishing standing. *Lujan*, 504 U.S. at 561. At the summary judgment stage, Plaintiff must present affidavits or other evidence which, if taken as true, establish those elements. *Id.*

The crux of Defendants argument is that Plaintiff cannot show that it has been injured by the HHS regulation because it cannot prove that Plaintiff's cap liability would be materially reduced had it been calculated using the proportional method outlined in

42 U.S.C. § 1395oo(f)(1). (Doc. 110 at 13). This argument has been rejected by virtually every federal court which has considered it. *See, e.g.*, *Lion Health Services, Inc. v. Sebelius*, 2011 WL 834018 at *4 (5th Cir. March 11, 2011); *Los Angeles Haven Hospice, Inc. v. Sebelius*, 2011 WL 873303 at *6-9 (9th Cir. March 15, 2011); *Infinity Care of Tulsa v. Sebelius*, No. 09-cv-723, 2011 WL 778111 at *2 (N.D.Okla. February 28, 2011); *Hospice of New Mexico, LLC v. Seblelius*, 691 F.Supp.2d 1275, 1287-88 (D.N.M., 2010); *Tri-County Hospice v. Sebelius*, No. 08-273, 2010 WL 784836 at *1-3 (E.D.Okla. March 8, 2010); *Russell-Murray Hospice, Inc. v. Sebelius*, 724 F.Supp.2d 43, 52-55 (D.D.C., 2010).

To the extent that Defendant suggests that only a proven financial injury can establish Plaintiff's standing to sue, Defendant is mistaken. The Supreme Court has held that being subject to an unconstitutional law or regulation is an "injury" sufficient to confer standing. *Lujan*, 504 U.S. at 561-62.

> [T]he nature and extent of facts that must be averred . . . in order to establish standing depends considerably upon whether the Plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction caused him injury, and that a judgment preventing or requiring the action will redress it.

*Id.* There is no doubt that Zia has been subject to a regulation which it contends is unconstitutional. This is sufficient to establish standing. *Lion Health Servs. Inc., v. Sebelius*, 689 F.Supp.2d 849, 855 (N.D.Tex. 2010) ("The legal right asserted . . . [was] the right to have its cap and cap overpayments calculated according to the method specified by law, not the right to the return of a certain amount of money.").

The Court further notes that Zia has provided affidavits showing that the 2006, 2007, and 2008 repayment demands would have been substantially reduced had they

been calculated pursuant to the proportional method mandated by Congress. (Doc. 91-7 at 2-3; Doc. 109-1 at 1-4). Such a showing is sufficient to establish standing. *Russell-Murray*, 724 F.Supp.2d at 54 ("[P]laintiff has offered evidence that if HHS had calculated the cap figure using a proportional allocation . . the plaintiff's cap liability would have been reduced by over $300,000 . . . the court is persuaded that the plaintiff has demonstrated a substantial probability that it has suffered economic harm through the application of the challenged regulation."); *Hospice of New Mexico*, 691 F.Supp.2d at 1287-88. Plaintiff has standing to pursue this action.

###    C.    42 C.F.R. § 418.309(b)(1) Is Invalid

The Court now turns to the fundamental question in this case - whether 42 C.F.R. § 418.309(b)(1) comports with its parent Congressional statute, 42 U.S.C. § 1395f(i)(2). The Congressional statute requires HHS to count hospice care beneficiaries proportionally over the number of years in which they received such care. *See* 42 U.S.C. § 1395f(i)(2) (providing that "the "number of medicare beneficiaries" in a hospice program in an accounting year is "equal to the number of individuals who have made an election under subsection (d) of this section with respect to the hospice program and have been provided hospice care by (or under arrangements made by) the hospice program under this part in the accounting year, *such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year or under a plan of care established by another hospice program.*") 42 U.S.C. § 1395f(i)(2)(c) (emphasis added). The regulation promulgated by

HHS only counts hospice care recipients in the year in which they received the bulk of their hospice care. *See* 42 C.F.R. § 418.309(b)(1).

Plaintiff contends that the HHS regulation conflicts with Congress' express mandate and that the regulation must be invalidated. (Doc. 100 at 16). Defendant counters that the term "reflect" in 42 U.S.C. § 1395f(i)(2)(c) is ambiguous and that HHS' method of approximating or estimating the aggregate number of hospice care beneficiaries in a given accounting year comports with the Congressional statute. (Doc. 110 at 20-23).

Because the issue is whether the Secretary's regulation complies with the relevant Congressional statute, this Court's review is governed by the standards elucidated in *Chevron v. Natural Defense Council, Inc.*, 467 U.S. 837 (1984). Under the *Chevron* analysis, the Court first asks "whether Congress has spoken to the precise issue." *Id.* at 842. If so, then this Court need not give any deference to HHS' regulation and this Court must effectuate Congress' intent. *Id.* at 843. However, if the "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's [action] is based on a permissible construction of the statute." *Id.* If the Congressional statute is indeed ambiguous or susceptible of multiple reasonable interpretations, then the agency's action is entitled to deference. *Id.* at 844.

Like virtually every court which has considered this issue, the Court finds that it need not move past the first step of the *Chevron* analysis. To determine whether Congress has "spoken to the precise issues[,]" the Court looks to the plain language of the relevant statute. The Court should read the statute as a whole and give the words of

the statute their ordinary meaning, unless the context of the statute dictates a different result. *Gonzales v. Carhart*, 550 U.S. 124, 152; *United States v. Morton*, 467 U.S. 822, 828 (1984). In this case, the Court does not hesitate to say that Congress has spoken directly to the issue here. The statute requires HHS to compute the hospice cap for each patient in a manner which will "*reflect the proportion* of hospice care that *each such individual* was provided in a previous or subsequent accounting year." 42 U.S.C. § 1395(f)(i)(2)(c). The Court finds this to be a clear statement of Congress' intent that HHS should calculate a patient's hospice cap over every year in which they receive such care.

The Secretary contends that the word "reflect" is ambiguous and that it allows HHS to be somewhat flexible in its computation of the hospice cap. (Doc. 110 at 21). As the Secretary puts it, the statute does not require that HHS account for the actual proportion of time any given patient spends in hospice care. Rather, the permissive term "reflect" means that HHS may simply estimate the number of hospice patients receiving care in one specific year. (*Id.* at 21 ("[T]he statute nowhere says that when [the number of patients] is reduced, it must be reduced on the *actual* proportion of time that every individual spends in the hospice. Instead, the statute provides that the reduction need only "reflect" the fact that some patients receive a portion of their care in other accounting years.")) (emphasis in original). In support, the Secretary points to empirical studies conducted by HHS which predict the year in which a patient will receive the greatest proportion of their care. (*Id.* ("The result is an aggregate "number of

16

beneficiaries" for the hospice that should reasonably approximate the number one would obtain from a strictly proportional calculation.")).

Defendant further cites to *Bd. Of Trade of City of Chi. v. S.E.C.*, 187 F.3d 713 (7th Cir. 1999), to support her loose construction of the term "reflect." In that case, the Seventh Circuit was construing a statute which required that a stock exchange index "reflect the market for all public traded equity or debt securities or a substantial segment thereof." *Id.* at 719. In that context the Seventh Circuit found that a 92% correlation between a stock index and a broader portfolio did "reflect" the market, or a substantial segment thereof. *Id.* However the use of the term "reflect" in the statute here is quite different. 42 U.S.C. § 1395f(i)(2)(c) directs HHS to account for the care that "each such individual was provided " for every year that the patient elected to receive hospice care. It is clear that Congress meant for the hospice cap reduction to reflect the amount of care that "each . . . individual" might have received in a different accounting year. *See Lion Health Services*, 2011 WL 834018 at *6 ("The Seventh Circuit's analysis using the word "reflect," however, is inapposite to the case before us. [42 U.S.C. § 1395f(i)(2)(c)] speaks directly in terms of the proportion of care that *each such individual* was provided . . . A regulation that assigns an individual patient's care to a single year cannot possibly "reflect" the portion of a fiscal year that the individual spent at hospice.").

HHS itself has acknowledged that 42 C.F.R. § 418.309(b)(1) does not comport with its parent Congressional statute. In proposing the regulation, HHS frankly admitted that it was not adopting Congress' proportional allocation method for logistical reasons. *See* 48 Fed. Reg. 38146 at 38158 (Aug. 22, 1983) (stating that it "would be difficult [to

perform a proportional allocation] in that the proportion of the hospice stay occurring in any given year would not be known until the patient dies or exhausted his or her hospice benefits."). The Secretary further stated that this alternative payment scheme "will achieve the intent of the statute without being burdensome." *Id.* Accordingly, the Court finds that 42 C.F.R. § 418.309(b)(1) fails the first step of the *Chevron* analysis. 42 C.F.R. § 418.309(b)(1) is invalid and may not be enforced against Plaintiff.

    D.    **Fifth Amendment Takings Claim**

    Plaintiff argues that 42 C.F.R. § 418.309(b)(1) amounts to an "unlawful taking of private property without just compensation in violation of the Fifth Amendment of the United States Constitution." (Doc. 100 at 11; Doc. 103 at 9). In order to establish a viable takings claim, Plaintiff must establish that it had a "legitimate claim of entitlement" to the benefit. *Federal Lands Legal Consortium v. United States*, 195 F.3d 1190, 1196 (10th Cir. 1999) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). However, the Tenth Circuit has held that, when a service provider voluntarily enters into a regulated government program like Medicare wherein services and compensation are determined by statute, there can be no taking because nothing compelled Plaintiff to provide the services in the first place. *Painter v. Shalala*, 97 F.3d 1351, 1357-58 (10th Cir. 1996); *see also Garelick v. Sullivan*, 987 F.2d 913, 916 (2nd Cir. 1993) ("[W]here a service provider voluntarily participates in a price-regulated program or activity, there is no legal compulsion to provide service and thus there can be no taking."). There is no authority for the proposition that 42 C.F.R. § 418.309(b)(1) amounts to a taking under the Fifth Amendment and every court which has considered the issue has concluded

that repayment demands do not violate the takings clause. *See Hospice of New Mexico, LLC v. Seblelius*, 691 F.Supp.2d 1275 (D.N.M., 2010); *Native Angles Home Care Agency, Inc. v. Sebelius*, 2010 WL 4484562 (E.D.N.C., Oct. 29, 2010); *Los Angeles Haven Hospice, Inc. v. Leavitt*, 2009 WL 5868513 (C.D. Cal., July 13, 2009). Therefore, Defendant is entitled to partial summary judgment on the takings claim.

E.   **Relief Requested**

i.   **Prospective Relief**

Plaintiff asks that the Court "issue an injunction prohibiting the enforcement of the demand for repayment for fiscal year 2008 ("FY08") and all subsequent years."  (Doc. 100 at 1). Defendant contends that this Court is without jurisdiction to grant prospective relief to Plaintiff and that any disputes regarding future repayment demands must be adjudicated through the PRRB administrative process. (Doc. 110 at 23-25). Plaintiff replies that this Court may enjoin the use of 42 C.F.R. § 418.309(b) for FY 2006, 2007, 2008, and for all future years. Plaintiff points to the section of the APA which mandates that this Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] in excess of statutory . . . authority." 5 U.S.C. § 706(2)(A), (C). Plaintiff claims that failure to permanently enjoin the use of a challenged regulation after the Court has found it to be invalid would not only conflict with § 706's mandatory language, it would lead to an absurd result. (Civ. 09-1108, Doc. 32 at 18-19 ("HHS' argument is that this Court is powerless to prevent the agency from continuing to

19

enforce an unlawful regulation except for an individual challenge to each unlawful demand thereunder for each fiscal year")).

Defendant posits that, since Congress did not provide for general federal question jurisdiction under 28 U.S.C. § 1331 for Medicare reimbursement cases, Plaintiff may only seek judicial review of a repayment demand after pursuing administrative exhaustion pursuant to 42 U.S.C. § 1395oo(f)(1). (*Id.*). Defendant acknowledges that § 706 directs courts to "hold unlawful and set aside agency action . . . found to be . . . not in accordance with the law[,]" but she argues that until a fiscal intermediary interposes a repayment demand and that demand is exhausted before the PRRB, no "agency action" has occurred. Defendant cites to *Riley Hosp. & Benevolent Ass'n v. Bowen*, 804 F.2d 302, 305 (5th Cir. 1986) for the proposition that § 1395oo(f)(1) confers jurisdiction solely for fiscal years that have been fully exhausted through the administrative process. This Court is unpersuaded.

Defendant is correct that the APA does not, on its own, provide jurisdiction for this Court to review administrative agency decisions. *Califano v. Sanders*, 430 U.S. 99, 105 (1977). The Court's jurisdiction is governed by the relevant Congressional statute - 42 U.S.C. § 1395oo(f)(1). However, none of the cases cited by Defendant state that the challenged regulation cannot be the "agency action" at issue under § 706. As the Supreme Court held in *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990), the term "agency action" means "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof . . ." *Id.* at 882. As stated above, the validity of the challenged regulation is properly before this Court, and the Court has found that the

20

regulation does not comport with 42 U.S.C. § 1395oo(f)(1). Therefore, because the challenged regulation is the "agency action" complained of, § 706 requires that this Court invalidate the regulation.

Defendant's citation to *Riley* is unpersuasive. In *Riley*, the Fifth Circuit held that the District Court was without jurisdiction to order HHS to compute and pay interest to a plaintiff for years that had yet to be administratively exhausted. *Riley*, 804 F.2d at 305. The Fifth Circuit has recently stated that its ruling in *Riley* does not prohibit a District Court from enjoining HHS from applying 42 C.F.R. § 418.309(b) for future cost years. *Lion Health Services, Inc. v. Sebelius*, 2011 WL 834018 at *8 (5th Cir., March 11, 2011)

> [T]his Court's decision in *Riley* does not preclude the district court's injunction. In *Riley*, we affirmed the district court's finding that it was without jurisdiction to compel the Secretary to pay interest for years in which the plaintiff has not exhausted its claims before the PRRB. This relief would have required . . . the agency to compute interest for years in which the plaintiff had not exhausted its claims. This is distinct from the relief ordered by the district court here, which merely forbade the Secretary from continuing to apply an invalid regulation.

*Id.* at *8 (internal citations omitted). Therefore, the Court finds that it is empowered, and in fact required, to enjoin the use of 42 C.F.R. § 418.309(b) against Zia in computing Zia's repayment demand for FY 2006, 2007, 2008, and any other year. *Los Angeles Haven Hospice v.  Sebelius*, 2011 WL 873303 at * 13 (9th Cir., March 15, 2011) (holding that because Plaintiff challenged the validity of the regulation itself, "the district court had both the authority and discretion to enjoin future application of the invalid regulation."); *see also Russell-Murray Hospice, Inc. v. Sebelius*, 724 F.Supp.2d 43, 60 (D.D.C., 2010).

ii.     **Monetary Relief**

Plaintiff seeks a return of "any overpayments that have been made to HHS pursuant to the FY06 Demand, the FY07 Demand and/or the FY08 Demand . . ." (Doc. 100 at 26). The Court is wary of ordering the Secretary to refund all monies paid to Zia since extensive fact-finding and hearings must still be held to establish what Zia's repayment demand will be under the proportional calculation method mandated by § 1395oo(f)(1). The more appropriate remedy is to remand this case to allow the Secretary to recalculate Zia's repayment demand using the proportional method of calculation. *See, e.g.*, *Lion Health Services, Inc. v. Sebelius*, 2011 WL 834018 at *9 (5th Cir., March 11, 2011) ("[T]he determination of the amount of refund owed to Lion is a matter properly within the agency's authority. Therefore, the district court's decision to order a full refund rather than remanding for recalculation of the refund amount was an abuse of discretion."); *see also Hospice of New Mexico, LLC v. Sebelius*, 691 F.Supp.2d 1275 (D.N.M., 2010). Therefore, following the entry of judgment in Plaintiff's favor, the Court will remand the issue to the Secretary for a recalculation of Zia's repayment demand for FY 2006, 2007, and 2008. Inasmuch as the recalculated demands are for less than the monies already paid by Zia, the Secretary will reimburse Zia for those funds. Should the recalculated cap amount exceed the amount already paid by Zia, HHS may issue a second repayment demand for those fiscal years.

### iii.   **Plaintiff's Entitlement to Attorney's Fees**

Plaintiff seeks to recover all "reasonable attorneys' fees in this action" and cites to the Equal Access to Justice Act, 28 U.S.C. § 2412. (Doc. 100 at 27). Defendant asserts that the Court may not award attorneys fees because Plaintiff's request for such fees is premature, and because the Secretary's position was substantially justified. (Doc. 110 at 25-27; Doc. 101 at 20-21). The Court finds that Plaintiff's request for attorneys' fees is premature.

The Equal Access to Justice Act ('EAJA') provides that

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). However, a request for fees under EAJA may only be made "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). The statute defines a "final judgment" as "a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(2)(G). The time period for applying for EAJA fees therefore begins to run after the time for appealing the district court's judgment has expired. *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991); *Hartter v. Apfel*, 36 F.Supp.2d 1303 (D.Kann 1999). Because the time period for Defendant to appeal this Court's ruling has not yet expired, Plaintiff's

request for EAJA fees is premature and will be denied.[3] Zia may re-apply for EAJA fees following the entry of a final judgment in this case.

### G.    Order

Based on the above Memorandum Opinion, **IT IS HEREBY ORDERED THAT**

1) Defendant's *Motion for Summary Judgment and Brief in Support of Summary Judgment* (Civ. 09-055, Doc. 110; Civ. 09-1108, Doc. 31) is **DENIED**;

2) Defendant's *Opposed CV Motion for Partial Dismissal* (Civ. 09-1108, Doc. 26) is **DENIED AS MOOT**.

3) *Plaintiff's Motion for Summary Judgment on Declaratory and Injunctive Claims for Relief*, (Civ. 09-055, Doc. 100; Civ. 09-1108 Doc. 35), is **GRANTED IN PART AND DENIED IN PART**. Specifically, Plaintiff's motion is granted except insofar as it relates to Plaintiff's Fifth Amendment Takings Claim, Plaintiff's request for an immediate reimbursement of monies paid to HHS, and Plaintiff's claims for attorney's fees under EAJA.

4) 42 C.F.R. § 418.309(b)(1) is found to be in conflict with 42 U.S.C. § 1395oo(f)(1) and HHS is therefore enjoined from continued enforcement of its repayment demand for FY 2006, 2007, 2008.

---

[3] An application for EAJA fees must include "the amount sought . . . [and] and itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B). Plaintiff's counsel have not stated what amount they are seeking in attorneys fees, and they have not presented any itemized statement reflecting the actual time expended in litigating this case.

5) HHS is enjoined from any further use of 42 C.F.R. § 418.309(b)(1) in the calculation of Zia's statutory reimbursement cap or in the calculation of Zia's repayment demands for any past or future accounting year.

6) HHS is directed to recalculate Zia's repayment demand for FY 2006, 2007, 2008, and to refund any monies overpaid by Zia on those repayment demands.

_____

THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE